IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BEN H. ANDERSON, PARKER FREEMAN
and ADAM BATH, individually and
for all others similarly
situated,

      Plaintiffs,

v.

KING AMERICA FINISHING, INC.,
MICHAEL ALBERT BEASLEY and
BILLY T. PARISH,

      Defendants.

CIVIL ACTION NO.
1:11-cv-2258-JEC

## ORDER & OPINION

This case is before the Court on plaintiffs' Motion to Remand [6], defendants' Motion to Strike Affidavit of Jean Mangan, J.D. [15] and plaintiffs' Motion for Leave to Amend [20]. The Court has reviewed the arguments of the parties and, for the reasons set out below, concludes that plaintiffs' Motion to Remand [6] should be **DENIED**, defendants' Motion to Strike [15] should be **DENIED as moot,** and plaintiffs' Motion for Leave to Amend [20] should be **DENIED.**

## BACKGROUND

Plaintiffs allege that beginning on May 16, 2011, defendant King America Finishing, Inc. ("KAF") released a toxic chemical into the Ogeechee River from its manufacturing plant in Dover, Georgia.

(Compl. [1] at ¶ 17.)   Dover is located in southeast Georgia in Screven County.   The Ogeechee runs from Dover through four additional counties (Bulloch, Effingham, Bryan, and Chatham) and empties into the Atlantic Ocean.   According to plaintiffs, the toxic chemical release caused significant damage to surrounding land downstream from the Dover plant, extending through these five counties.   (*Id*. at ¶¶ 18-22, 38-47.)   In addition, plaintiffs claim that certain individuals who swam in the Ogeechee River suffered from physical injuries due to the release.   (*Id*. at ¶¶ 24, 28-36.)

On June 7, 2011, plaintiffs filed a class action complaint in Fulton County Superior Court.   (*Id*. at 1.)   In the complaint, plaintiffs Anderson and Freeman claimed injury to their land.   (*Id*. at ¶¶ 18-22, 38-47.)   They purported to represent a property damage class defined to include "[a]ll possessors of property affected, directly or indirectly, by [the May, 2011] release of chemicals into the waters of the Ogeechee River."   (Compl. [1] at ¶ 26.)   Plaintiff Bath claimed that he swam in the Ogeechee River shortly following the release, resulting in the burning of his lungs and subsequent breathing difficulties.   (*Id*. at ¶¶ 24, 28-36.)   He purported to represent a personal injury class defined to include "[a]ll persons who have been exposed, directly or indirectly, with the waters of the Ogeechee River that had been contaminated by the Release."   (*Id*. at ¶ 26.)

2

Defendants removed the case to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453. (Notice of Removal [1].)  CAFA provides for the removal of any class action in which there is:  (1) minimal diversity, (2) at least 100 putative class members and (3) $5 million in alleged damages.  28 U.S.C. §§ 1332(d)(2) and 1453.  It is undisputed that these requirements are met in this case.  (Notice of Removal [1] and Pls.' Br. in Supp. of Mot. to Remand ("Pls.' Br.") [6].)  Plaintiffs concede that all of the named plaintiffs are diverse from defendant Billy Parish, that the putative class exceeds 100 members, and that the claims exceed $5 million in damages.  (Notice of Removal [1] at ¶¶ 7-16 and Pls.' Br. [6] at 6-8.)

Nevertheless, plaintiffs have filed a motion to remand the case to state court.  (Pls.' Mot. to Remand [6].)  In support of their motion, plaintiffs cite the "local controversy" exception to CAFA jurisdiction, which provides for the remand of a class action that "uniquely affects a particular locality to the exclusion of all others." *Evans v. Walter Indus., Inc.,* 449 F.3d 1159, 1164 (11th Cir. 2006).  In addition to the motion to remand, the parties have filed related motions to (1) strike an affidavit submitted in support of remand and (2) amend the complaint to expressly allege a "local

controversy."[1]  (Defs.' Mot. to Strike [15] and Pls.' Mot. to Amend [20].)  All of these motions are now before the Court.[2]

## DISCUSSION

I. **PLAINTIFFS' MOTION TO REMAND [6]**

    A.   Legal Standard

As noted, plaintiffs do not dispute that defendants have met all of the conditions for removal under CAFA.  (Pls.' Br. [6] at 3-4.) The relief that plaintiffs seek in their motion is remand to state court pursuant to the "local controversy" exception to CAFA jurisdiction.  (*Id.* at 3-6.)  Under CAFA, plaintiffs bear the burden of proving that the exception applies.  *Evans,* 449 F.3d at 1164 ("when a party seeks to avail itself of an express statutory exception to federal jurisdiction granted under CAFA . . . we hold that the party seeking remand bears the burden of proof with regard to that exception").

A "local controversy" is defined by CAFA as a class action in which:  (1) greater than two-thirds of the class members are citizens

---

[1]  Defendants have also moved to dismiss plaintiffs' complaint as to the two individual defendants.  (Defs.' Mot. to Dismiss [5].) However, that motion has been stayed pending a decision on the motion to remand.  (Consent Order [9].)

[2]  This case was originally assigned to the Honorable Clarence Cooper, before whom the present motions were filed.  Judge Cooper recused on April 2, 2012, after which the case was reassigned to the undersigned.

4

of the state in which the action was originally filed, (2) at least one "significant" defendant is a citizen of the state in which the action was filed and (3) the principal injuries alleged in the action were incurred in the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(A).[3] Defendants concede, for purposes of this motion, that Michael Beasley is a significant defendant who is a citizen of Georgia, and that the alleged principal injuries also occurred in Georgia. (Defs.' Resp. Br. [10].) The dispute between the parties centers around the two-thirds requirement. (*Id.* at 5-12.)

In order to meet their burden on the two-thirds requirement, plaintiffs must present evidence from which the Court can credibly adduce that more than two-thirds of the purported class members are Georgia citizens. *Evans,* 449 F.3d at 1166. *See also Scott v. ING Clarion Partners, LLC*, No. CIVA 1:06CV1843 RLV, 2006 WL 3191184, at *5 (N.D. Ga. Oct. 31, 2006)(Vining, J.)(finding that plaintiffs had produced insufficient evidence to satisfy their burden on the two-thirds requirement). Although it need not be conclusive, the evidence presented cannot require a significant amount of "guesswork" as to the actual citizenship of class members. *See In re Sprint*

---

[3] A "local controversy" also exists where "two-thirds or more" of the class members and the "primary defendants" are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B). However, plaintiffs do not rely on this alternative definition. (Pls.' Br. [6] at 7-9.)

*Nextel Corp.,* 593 F.3d 669, 674 (7th Cir. 2010)(a billing address or phone number within a state is not sufficiently coterminous with state citizenship to meet plaintiff's burden) and *Heretick v. Publix Super Markets, Inc.,* 841 F. Supp. 2d 1247, 1250 (M.D. Fla. 2012)(plaintiff could not meet its burden of showing that two-thirds of Publix ATM users were citizens of Florida with evidence that 71% of all Publix stores were in Florida).   For purposes of federal jurisdiction, a natural person is a citizen of the state in which he is domiciled.  *McCormick v. Aderholt,* 293 F.3d 1254, 1257-58 (11th Cir. 2002).   A corporation is a citizen of any state in which it is incorporated and the state in which it has its principal place of business.  28 U.S.C. § 1332(c).

    B.   <u>Plaintiffs' Evidence</u>

    Plaintiffs assert in their motion that 654 out of 932 class members (70.2%) are Georgia citizens.  (Pls.' Reply [13] at 7-8.) Plaintiffs reached the 932 number by adding 20 individuals who claim to have suffered personal injury as a result of the release to 912 owners of allegedly affected land.  (*Id.* at 7.)  Plaintiffs attained the names of the 912 landowners from tax assessment records and cross-referenced those names with Georgia's Voter Registry Database and the Georgia Secretary of State's Corporation website.  (*Id.* at 5-7.)  According to plaintiffs, the comparison identified 578 property owners who were registered to vote in Georgia and 57 legal entities

whose principal place of business is Georgia. (*Id.*) Plaintiffs then determined, through interviews, that 19 out of the 20 prospective personal injury plaintiffs are Georgia citizens. (*Id.* at 7.)

Defendants argue that tax records and voter registration records are insufficient to establish the actual owners of the affected properties and their citizenship status. (Defs.' Surreply [24] at 2-5.) For example, tax records may not have recorded recent property sales and voter registration records may not reflect an individual's current citizenship. (*Id.*) Thus, defendants contend that these are not adequate tools to determine whether the affected individuals were Georgia citizens at the time that the complaint was filed. (*Id.*) As to the corporate class members, defendants point out that the "principal mailing address" available on the Secretary of State's website is not equivalent to a principal place of business. (*Id.* at 5-6.)

Defendants also challenge the total number of class members upon which plaintiffs derive their 70.2% calculation. (*Id.* at 7.) As noted, plaintiffs define the property class to include all possessors of land affected directly or indirectly by the May, 2011 release. (Compl. [1] at ¶ 26.) The personal injury class is similarly defined to include all persons who were directly or indirectly exposed to the contaminated waters of the Ogeechee River. (*Id.*) Given the broad class definitions, defendants contend that it is likely that the

7

purported class includes more than 932 members, and that the 70.2% figure is therefore inaccurate. (Defs.' Surreply [24] at 7.)

    C.   Analysis

    The Court recognizes the potential shortcomings of using tax and voter registration records to establish the citizenship of the property class members. *See Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1249 (11th Cir. 2005)(voter registration in a particular state is not equivalent to citizenship of that state). The tax records may be out of date and an individual registered to vote in Georgia may have long since left the state. However, the Court is unwilling to say categorically that these methods of proof are inadequate to meet the class member citizenship requirement of the local controversy exception under CAFA. Given a reasonable class definition and thorough research and documentation by plaintiffs, cross-referencing tax and voter registration records might provide sufficient information to credibly adduce that two-thirds of the landowner class members are Georgia citizens. *Evans,* 449 F.3d at 1166.

    Likewise, the Court is unwilling to require individual interviews with every single personal injury class member in order to verify Georgia citizenship, as defendants seem to contemplate. *See Gavron v. Weather Shield Mfg., Inc.*, No. 10-22088-CIV, 2010 WL 3835115, at *3 (S.D. Fla. Sept. 29, 2010)("[plaintiff] is not

8

expected to account for *all* class members")(Huck, J.).   Neither CAFA nor *Evans* nor common sense requires this much.   As indicated above, many of the cases in which district courts have rejected plaintiffs' efforts to establish class member citizenship have been instances where the proffered evidence is mere conjecture and devoid of any empirical analysis.   *Id.*   *See also Scott*, 2006 WL 3191184, at *5 ("plaintiffs have come forward with *no evidence whatsoever* to support such a claim")(emphasis added).

That being said, the tax and voter registration records only show that 578 out of the 912 purported property class members (62%) are Georgia citizens.   Plaintiffs reached their 70.2% figure by adding to their calculations 57 additional property class members, comprised of a group of legal entities that were determined to be Georgia citizens by reference to the Secretary of State's Corporation website, as well as 19 out of 20 personal injury class members who were determined by interview to be Georgia citizens.   (Pls.' Reply [13] at 7.)   There is no sound evidentiary basis for including either of these groups in the calculation.

With regard to the 57 legal entities, the Secretary of State's website merely lists a Georgia office address for each entity.   (Defs.' Surreply [24] at Ex. A.)   The website does not indicate that any of these entities have their "principal place of business" in Georgia.   *See Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010)(a

corporation is deemed to be a citizen of the state where its "nerve center" is located, which may or may not be the same as the corporation's office address).  In addition, at least some of the 57 entities are not corporations, but LLCs or other forms of partnerships. (*See* Property Owners List Verified by Comparison to GA Voter Registry [13] at 1.)  The citizenship of an LLC or a partnership is determined by the citizenship of the entity's members. *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1086-88 (11th Cir. 2010).  The Secretary of State's website does not shed any light on that issue.

As to the 19 personal injury class members, plaintiffs do not describe how these individuals were contacted or selected for interviews. *See Evans,* 449 F.3d at 1166 ("we know nothing about the percentage of the total class represented by the . . . people on which plaintiffs' evidence depends").  The affidavits describing the interviews reference some of the plaintiffs' family members as potential victims.  (*See* Azar Aff. [6] at ¶ 4.)  However, the affidavits do not indicate whether these family members are Georgia citizens, or how many of these family members there might be.  Moreover, while plaintiffs have provided Georgia addresses for the 19 prospective plaintiffs, having a residence in Georgia is not determinative of state citizenship.  *See McCormick,* 293 F.3d at 1257-58.

In addition to the evidentiary issues with the numerator in plaintiffs' equation, there are serious questions about the denominator as well. Plaintiffs' 70.2% figure is based on a total aggregate class of 932 plaintiffs. (Pls.' Reply [13] at 7.) But as mentioned, both the property and the personal injury classes are defined broadly in the complaint to include all land and persons directly or indirectly impacted by the May, 2011 release. (Compl. [1] at ¶ 26.) Given that broad definition, the property class likely includes many more members than the 912 landowners in the particular geographical area chosen by plaintiffs' attorneys. Likewise, there may be many more individuals who were "indirectly" injured by the release than the 20 potential class members interviewed by plaintiffs. The Court cannot speculate about the citizenship of these unaccounted for class members. For all of these reasons, plaintiffs' motion to remand [6] is **DENIED.**[4]

## II.   **PLAINTIFFS' MOTION TO AMEND [20]**

Presumably concerned that their motion to remand would not be granted, approximately three months after the briefing on the remand motion had concluded, the plaintiffs filed a motion to amend their complaint. (Pls.' Mot. for Leave to Amend [20].) Through this

---

[4] In reaching its conclusion, the Court considered the Affidavit of Jean Mangan and found the evidence therein insufficient to support remand. Accordingly, defendants' motion to strike the affidavit [15] is **DENIED as moot.**

11

attempted amendment, plaintiffs seek to limit their class to only Georgia citizens. (*Id.*)  According to plaintiffs, this proposed amendment will moot the controversy between the parties regarding the citizenship of the plaintiff class members and the applicability of the local controversy exception. (*Id.* at 2.)  Assuming the motion to amend is granted, the Court assumes that plaintiffs will file a second motion to remand on "local controversy" grounds.

Plaintiffs' motion to amend is governed by Federal Rule 15(a)(1), which permits a party to amend its pleading once, as a matter of course within:

(A)  21 days after serving it, or

(B)  ...21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (3), or (f), whichever is earlier.

FED. R. CIV. P. 15(a)(1)(A)-(B).

Here, the defendants had filed both a responsive pleading (an answer) and a motion to dismiss under Rule 12(b).  Plaintiffs' motion to amend was filed almost five months after the above submissions by defendants.  Accordingly, plaintiff must obtain the approval of the Court in order to amend the complaint.  "[L]eave [to amend]" shall be "freely give[n] when justice so requires."  Rule 15(a)(2).  Courts generally grant leave to amend unless there is a substantial reason for denial, such as "undue delay, undue prejudice to the defendants, [or] futility of the amendment." *Carruthers v. BSA Adver., Inc.,* 357

12

F.3d 1213, 1218 (11th Cir. 2004).

Defendants have filed a response in which they argue that the amendment should be denied based on the grounds of "bad faith, undue prejudice, and futility...." (Defs.' Resp. [21] at 2.) They note, in particular, plaintiffs' failure to "clearly, concisely, and consistently redefine the proposed sub-classes." (*Id.*) Finally, defendants argue that plaintiffs' proposed amendment is an "impermissible attempt to improperly influence the Court's determination of jurisdiction" and violates the principle established by the Eleventh Circuit that a court must review the propriety of removal on the basis of the documents submitted at the time of removal, not on an amended pleading. (*Id.* at 9.)

Plaintiffs have filed no reply to defendants' response. Analyzing defendants' contentions without the benefit of any argument to the contrary by plaintiff, the Court concludes that defendants' points seem meritorious. As defendants correctly note, plaintiffs have not been sufficiently clear about their proposed amendments to enable the Court to grant a motion to amend. In the motion itself, plaintiff proposes changing the property class definition to "All Georgia citizens" affected by the May, 2011 release. (Pls.' Mot. to Amend [20] at 1-2.) However, in the brief submitted in support of the motion, plaintiffs propose changing the property class definition to "All citizens of Georgia that possess property affected" by the

13

release.  (Pls.' Br. in Supp. of Mot. to Amend [20] at 3.)   In the attached draft amendment, plaintiffs propose yet another, much broader definition of the property class. (Pls.' Proposed Am. Compl. [20] at ¶ 26.)

As for the personal injury class, plaintiffs repeatedly assert in their brief that they are proposing a change to the original definition. (Pls.' Br. in Supp. of Mot. to Amend [20] at 3.)   Yet, several times in the brief plaintiffs use exactly the same definition that they used in the original complaint. (*Id.*)  In the proposed amended complaint, plaintiffs do offer a different definition for the personal injury class. (Pls.' Proposed Am. Compl. [20] at ¶ 26.) However, the contradiction between the definition used in the brief and the definition proffered in the proposed amendment creates confusion.

Further, and despite their assurances to the contrary, plaintiffs have changed many of their initial allegations in ways that have nothing to do with the definition of the class.  (Pls. Proposed Am. Compl. [20].)  For example, plaintiffs have altered their calculations of the amount of land  owned by one of the lead plaintiffs and the length of the river that was affected by the May, 2011 release. (*Id.* at ¶¶ 3, 18.)  Plaintiffs have also added a claim for inverse condemnation. (*Id.* at ¶¶ 65-71.)

Given the above inconsistencies, it is not at all clear what

14

amendments plaintiffs seek to make to their complaint.  As a result, their motion to amend cannot be granted, as drafted.  Typically, the Court would consider giving the plaintiffs another opportunity to amend, if the plaintiffs had so expressed that wish.  Here, though, plaintiffs have made no request that they be allowed to file a second amendment in the event that the Court agrees with defendants as to the deficiencies in their pending proposed amended complaint.  As noted, plaintiffs filed no reply to defendants' response.

Even had plaintiffs asked for another chance to amend their complaint in order to satisfy the requirement for a "local controversy" under CAFA, they would still have to explain to the Court how a complaint, amended for the sole purpose of destroying diversity jurisdiction under CAFA, could be considered by the Court, given the legal authority to the contrary cited by the defendants.

Specifically, defendants cite Eleventh Circuit case authority in support of the principle that a court cannot consider a post-removal amendment to determine whether there is jurisdiction under CAFA. *See, e.g., Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 773 (11th Cir. 2010)("under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the removal") and *Miedema v. Maytag Corp.,* 450 F.3d 1322, 1331 (11th Cir. 2006) ("'Jurisdictional facts are assessed on the basis of plaintiff's complaint as of the time of removal.'")(quoting *Burns v. Windsor Ins.*

AO 72A
(Rev.8/82)

*Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994)).

While those cases are distinguishable as to the facts at issue-- albeit it is not clear that these different facts undermine the above principle--defendants have also cited a Seventh Circuit case that is closer to the facts here:  *In Re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379 (7th Cir. 2010).  In that case, after the district court had denied the plaintiffs' motion to remand, the plaintiffs asked for leave to amend their complaint to remove all their class allegations. The district court permitted them to amend for that purpose, and then remanded the case.   The Seventh Circuit reversed, endorsing the "well-established general rule...that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction." *Id.* at 380.  Noting the possibility that a plaintiff who sues in federal court can sometimes amend away jurisdiction, the court advised that "removal cases present concerns about forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction." *Id.* at 381.

Perhaps plaintiffs could have mounted an argument to dispute the reasoning articulated by the Seventh Circuit in *Burlington*, or distinguish its application to this case.  They did not attempt to do so, however, and it is not up to the Court to attempt to make those arguments for them.   Given the absence of any disagreement by plaintiffs as to defendants' argument that plaintiffs should not be

16

allowed to destroy jurisdiction by a post-removal amendment of their complaint and given the above-cited Eleventh Circuit case authority that while, not on point with these precise facts, does seem to disfavor them, the Court accepts defendants' argument on this issue as being unopposed.

For all the above reasons, the Court **DENIES** plaintiffs' motion to amend [20].

## CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiffs' Motion to Remand [6]; **DENIES as moot** defendants' Motion to Strike [15]; and **DENIES** plaintiffs' Motion to Amend [20].

As to the defendants' prior motion to dismiss, the Court earlier issued an Order denying without prejudice that motion, with leave for the defendants to refile within 14 days of a ruling on the motion to remand. (*See* Minute Order, May 29, 2012.) Thus, as the Court is now denying plaintiffs' motion to remand, we can expect defendants to soon refile that motion. The Court is not sure, though, that this would be the most efficient way to proceed. That is, plaintiffs do seem vulnerable to some of defendants' *Twombly* arguments. Certainly, if plaintiffs want to so proceed, we can now embark on litigation of this soon-to-be refiled motion to dismiss.

Yet, that litigation will further delay this case and probably

will eventually result in an Order requiring more specification by the plaintiffs.  That being so, the plaintiffs might prefer to go ahead and attempt to amend their complaint now, as best they are able to do so, to address some or all of the alleged deficiencies identified by defendants.

Accordingly, if plaintiffs wish, the Court will give them until **April 22, 2013** to file an amended complaint that eliminates, as much as possible, any *Twombly* issues.  Thereafter, defendants can file a renewed motion to dismiss based on the same grounds alleged before, if defendants conclude that such a motion is still necessary.

If, on the other hand, plaintiffs do not believe they can satisfy defendants' objections by filing an amended complaint, they should so advise the Court, and the latter will allow defendants to refile their present motion to dismiss.  Plaintiffs should advise the Court and defendants, by **April 5**, which course they choose to follow. If plaintiffs indicate on that date that they do not wish to go ahead and file an amended complaint now that addresses the *Twombly* challenges, the defendants may refile a motion to dismiss within 14 days thereafter.

SO ORDERED, this 25th day of MARCH, 2013.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

18